UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

TERRENCE J. DOLAN,

          Plaintiff,

v.                                        Case No. 5:08-cv-45-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

          Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability, disability insurance benefits, and supplemental security income. (Doc. 1.) The Commissioner has answered (Doc. 12), and both parties have filed briefs outlining their respective positions. (Docs. 17 & 19.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

On March 9, 2005, Plaintiff protectively filed applications for a period of disability, disability insurance benefits and supplemental security income, alleging a disability onset date of February 5, 2005. (R. 57-59, 65-68, 248.) Plaintiff's applications were denied initially and upon reconsideration. (R. 27-29, 34, 36-37, 249-50, 255, 258.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 35, 38.) The ALJ conducted Plaintiff's administrative hearing on February 13, 2007. (R.

285-309.) The ALJ issued a decision unfavorable to Plaintiff on February 28, 2007. (R. 13-25.) Plaintiff's request for review of the hearing decision by the Social Security Administration's Office of Hearings and Appeals was denied. (R. 4-7, 10, 12.) Plaintiff then appealed to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla in that the evidence must do more than merely "create a suspicion of the existence of [a] fact," and must include "such relevant evidence as a reasonable person would accept as adequate to support the conclusion."[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] *See* 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401(1971); Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); *accord* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding court must scrutinize entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding court must also consider evidence detracting from evidence on which Commissioner relied).

2

reasoning to determine that the Commissioner properly applied the law.[5] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, he is disabled.[11] Fourth, if a claimant's impairments do not

---

[5] Keeton v. Dep't Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] Id. § 404.1520(c).

[11] Id. § 404.1520(d).

prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] Id. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2.
> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

Id. (internal citations omitted).

[16] Walker, 826 F.2d at 1002. Once the burden shifts to the Commissioner to show that the claimant can perform other work, the grids may come into play. Id.

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker, 826 F.2d at 1003 ("The
(continued...)

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was forty eight (48) years old at the time of the ALJ's decision on February 28, 2007. (R. 66, 289.) He has a high school education and has previous work experience as a chemical worker, equipment operator, fence builder, home repairman, electrical installer, and maintenance worker. (R. 70-71, 74, 289-93.) Plaintiff contends that he has been unable to work since February 5, 2005, due to pain in his lower back, leg, knee, and left wrist, nerve damage in his neck, hearing loss, and Hepatitis C. (R. 66, 70, 293.) Plaintiff is insured for benefits through September 30, 2008. (R. 66.)

---

[17](...continued)
grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

[19] Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

[20] See id.

[21] See Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

Plaintiff raises two issues in his appeal both of which pertain to the ALJ's assessment of Plaintiff's complaints of depression and anxiety. Accordingly, the Court will limit its discussion of Plaintiff's medical records to Plaintiff's depression and anxiety.

**Plaintiff's Complaints of Depression and Anxiety**

Plaintiff's initial applications for disability, disability insurance benefits and supplemental security income made no mention of Plaintiff's depression and/or anxiety. (R. 26, 249.) It was not until his appeal of the Social Security Administration's decision that Plaintiff first mentioned any mental health complaints. (R. 87.) In an undated form entitled, "Disability Report - Appeal," Plaintiff advised that he began having problems with being forgetful, getting "angry over little things," and getting "really excited and nervous" in May 2005. (R. 87.)

During a telephone conversation with a Social Security Administration case manager in early August 2005, Plaintiff confirmed that he took Prozac as prescribed by his pain management doctor, Dr. Ulseth, but advised that he does not claim to have any mental health problems—only physical. (R. 101.)

Less than a week later, Plaintiff completed the Adult Function Report pursuant to the Social Security Administration's request. In the report, Plaintiff complained that he had memory and concentration problems. (R. 103-10.) He advised that he needs reminders to keep appointments and take care of his personal needs and that he has problems reading the paper because he is unable to stay focused. (R. 103, 105.) He also reported that he was having anxiety attacks. (R. 109.)

6

A subsequent Disability Report dated September 16, 2005, noted that Plaintiff's mental problems allegedly began in September 2005. (R. 111.) Plaintiff advised that Dr. Villacastin had prescribed new medications for treatment of anxiety and depression. (R. 111-13.)

Plaintiff's medical records date back to January 1999. However, Plaintiff's alleged onset of disability is February 5, 2005. Furthermore, as outlined above, according to Plaintiff his depression and anxiety did not become a problem until September 2005. (R. 111.) Accordingly, the Court will limit its discussion of the medical records preceding September 2005 to merely note that Plaintiff's complaints of depression and anxiety began well prior to the alleged onset of disability. (R. 129-32, 134, 141.)

Between May 2003 and August 2005, Plaintiff reported to Dr. Robert Ulseth of Citrus Anesthesia for pain management. Although Plaintiff claims that Dr. Ulseth prescribed Prozac to treat his complaints of depression,[22] there is absolutely no documentation of this in any of the medical records from Citrus Anesthesia. (R. 186-203.) In addition, Dr. Ulseth opined that Plaintiff does not suffer from a mental impairment that significantly interferes with daily functioning in his medical source statements dated June and August 2005. (R. 186-90.)

In June 2005, Plaintiff presented to Dr. Edward Demmi for a consultative examination with no complaints of mental health problems. Dr. Demmi's report made no mention of Plaintiff having a history of mental health problems. Upon examination,

---

[22] (R. 101, 114.)

Plaintiff's neurological system was unremarkable and a mental status examination was reportedly normal. (R. 176-77.)

Non-examining state agency physicians reviewed Plaintiff's medical records in July 2005 and again in August 2005 and completed a corresponding Physical Residual Functional Technique form. (R. 178-85, 204-11.) Neither state agency physician mentioned any functional limitations resulting from Plaintiff's depression or anxiety.

Plaintiff presented for an initial office visit with Dr. Alex Villacastin, a general practitioner, in August 2005. (R. 215-16.) Plaintiff advised that he has chronic problems with his lower back, right knee, right leg, left wrist, and both elbows—but did not mention any mental health problems. Plaintiff reported that he was currently taking Methadone, Flexiril, and Prozac. (R. 216-17.) Upon examination, Dr. Villacastin noted that Plaintiff's neurological system was intact. He diagnosed Plaintiff with nephrolithiasis, chronic pain syndrome, and lumbosacral degenerative joint disease and prescribed Methadone, Prozac, Flexeril, and Paxil. (R. 215-17.) He also recommended that Plaintiff follow up with his pain management physician. (R. 215.)

Plaintiff returned for follow up in September 2005 with complaints of being very anxious. Once again, examination of Plaintiff's neurological system was unremarkable. Dr. Villacastin diagnosed Plaintiff with anxiety disorder, prescribed Alprazolam and increased Plaintiff's Paxil prescription. (R. 214.)

Plaintiff returned to Dr. Villacastin's office in June 2006 for medication refills complaining of anxiety and sleeplessness. (R. 212.) Examination of Plaintiff's

neurological system was unremarkable. Dr. Villacastin prescribed Prozac and Xanax. (R. 212.)

In October 2005, Plaintiff initiated treatment with Dr. Mark Hashim at Naturecoast Pain Associates. (R. 245.) Dr. Hashim noted that Plaintiff's past medical history was positive for depression and that Plaintiff was currently taking Methadone, Flexeril, Prozac, Paxil, and Percocet. (R. 245.) During Plaintiff's subsequent monthly visits between November 2005 and July 2006, Dr. Hashim frequently noted that Plaintiff's mood was "flat." Each time, Plaintiff filled out a questionnaire and, in response to the question: "are you feeling depressed?" Plaintiff responded "yes." (R. 226-40.)

Medical records from Seven Rivers Regional Medical Center reveal that Plaintiff was prescribed Xanax and Prozac for treatment of anxiety and depression in September 2007. (R. 281-82.)

During his hearing before the ALJ in February 2007, while most of Plaintiff's complaints centered around pain in his leg, lower back and shoulders, he also complained of anxiety, panic attacks and depression. (R. 285-309.) Plaintiff testified that his depression has been going on for about ten years. (R. 300.) Recently, it has gotten worse due to his inability to work and worry caused by his lack of income. (R. 300.) According to Plaintiff, his medication (Prozac) is helping resolve the symptoms associated with depression. Plaintiff testified that his wife has noticed an improvement in his temperament. (R. 302.) Plaintiff also has anxiety and approximately three to five panic attacks a month. (R. 296, 301.) Plaintiff states that his panic attacks are triggered

9

when he is in a crowd or around a lot of people. (R. 301.) Plaintiff admitted that his medication (Xanax) does help to calm him down. (R. 301.)

Plaintiff testified that his treating physician, Dr. Villacastin, writes the prescriptions which treat his mental health complaints. (R. 300.) According to Plaintiff, he cannot afford to go to a psychologist or psychiatrist for treatment. (R. 300-01.)

**ALJ's Findings**

In the ALJ's review of the record, including Plaintiff's testimony, and medical records from several health care providers, the ALJ determined that Plaintiff has the following severe combination of impairments: status post lower left extremity fracture, and back disorder. (R. 18.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations. (R. 18-19.)

The ALJ then found that Plaintiff retained the RFC to perform the full range of sedentary work. (R. 19, 24.) The ALJ limited Plaintiff to lifting/carrying ten pounds, standing/walking for about two hours in an eight hour workday, and sitting for about six hours in an eight hour workday. (R. 19.) After considering all of the evidence of record—including Plaintiff's subjective complaints of problems with depression and anxiety—the ALJ determined that Plaintiff does not have a severe mental impairment. (R. 20.) The ALJ found only mild restriction of Plaintiff's activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. After finding that Plaintiff

could not perform his past relevant work as a chemical worker, equipment operator, fence builder, home repairman, electrical installer, or maintenance worker, the ALJ applied Rules 201.21 and 201.22 of the Medical-Vocational Guidelines (the "grids")[23] as a "framework" and found that Plaintiff was not disabled. (R. 24.)

## IV. **DISCUSSION**

The Plaintiff raises two issues on appeal. First, Plaintiff argues that the ALJ erred by not finding Plaintiff's depression to be a severe impairment at step two of the sequential analysis. Second, Plaintiff argues that the ALJ erred by applying the "grids" at step five of the sequential analysis without obtaining expert vocational testimony. In opposition, the Commissioner argues that the ALJ properly found that Plaintiff's depression was a non-severe impairment at step two because the evidence of record does not establish a mental impairment that significantly limits Plaintiff's ability to do basic work skills. The Commissioner further argues that the Commissioner fulfilled his burden at step five of the sequential analysis by properly employing rules 201.21 and 201.22 of the grids.

Based primarily on the fact that there is no evidence that Plaintiff has "ever experienced any medically documented difficulties with his activities of daily living, social functioning, concentration and task persistence, and adaptation to work or work-like situations," the ALJ properly found that Plaintiff's depression was not a "severe" impairment. (R. 20.) For a medical condition to be considered "severe," it must constitute more than a "deviation from purely medical standards of bodily perfection or

---

[23] 20 C.F.R. § 404, subpt. P, app. 2.

11

normality."[24] Thus, a diagnosis of "depression" does not necessarily compel the conclusion that the condition is disabling.[25] Although the threshold for meeting the definition of a "severe impairment" at step two is low, the burden is on the Plaintiff to provide evidence demonstrating the disabling impact of his depression.[26] He failed to do so. Even if Plaintiff's depression was sufficient to pass step two analysis the result would be no different because there was no evidence that Plaintiff's depression limited the mental activities generally required by skilled or unskilled sedentary work.[27]

At step five of the sequential analysis, the burden of proof shifted to the Commissioner to establish that the claimant could perform other work that exists in the national economy.[28] In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.[29] This burden may sometimes be met through exclusive reliance on the grids when each variable on the appropriate grid accurately describes the claimant's

---

[24] McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

[25] 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("[t]here must be a showing of related functional loss" for a psychological disorder to be considered disabling).

[26] Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. § 404.1512-.1513, .1521(a). *See also* SSR 85-28 (discussing definition of "basic work activities").

[27] *See, e.g.*, Miller v. Barnhart, 182 Fed. Appx. 959, 964 (11th Cir. 2006) (holding that even where ALJ improperly applied the regulations in reaching his decision, it did not constitute reversible error because the correct application would not contradict the ALJ's ultimate findings).

[28] Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

[29] *See* Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).

situation.[30] Exclusive reliance on the grids is not appropriate when the claimant is unable to perform a full range of work at a given functional level or when a claimant has non-exertional impairments that *significantly* limit basic work skills.[31] Basic work activities are "the abilities and aptitudes necessary to do most jobs" and include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.[32]

Here, the ALJ relied exclusively on the grids because the ALJ concluded that Plaintiff had the exertional capacity to perform substantially all of the requirements of sedentary work and that Plaintiff's non-exertional mental impairments did not significantly limit his capacity to perform basic work activities. (R. 20, 24.) Pursuant to Title 20, Part 404, Subpart P, Appendix 2, Rules 201.21 and 201.22 of the Code of Federal Regulations, the ALJ found that Plaintiff's profile as a younger individual able to perform essentially a full range of sedentary work guided the ALJ to a finding of "not disabled."[33]

---

[30] *See* Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

[31] Specifically, the Eleventh Circuit has held that "non-exertional limitations can cause the grid to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at a designated level." Murray v. Heckler, 737 F.2d 934, 935 (11th Cir. 1984).

[32] 20 C.F.R. § 404.1521(b).

[33] "Age: younger individual age 45-49; Education: high school graduate or more: Previous Work Experience: skilled or semiskilled-skills not transferable; Decision: not disabled." 20 C.F.R. Part 404, Subpt. P, App. 2, T.1. (2001).

There is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's mental impairments did not significantly limit Plaintiff's ability to handle the mental demands of skilled or unskilled sedentary work during the relevant time period. Notably, even though Plaintiff testified to having problems with depression for over ten years, Plaintiff did not list any mental impairments as a basis for disability on his initial applications. Furthermore, Plaintiff specifically informed a Social Security Administration case manager that he did not have any mental problems. In addition, he never sought treatment from a psychologist or psychiatrist. In fact, Plaintiff's medical records offer no objective medical evidence to support his subjective complaints of depression and anxiety. More importantly, the medical records are silent as to any functional limitations associated with Plaintiff's diagnoses of depression and anxiety.

Additionally, Plaintiff's own testimony also supports the ALJ's finding that Plaintiff did not have severe mental limitations. Plaintiff testified that the medication which he was prescribed helps him with his mood and his anxiety.

In sum, the ALJ adequately addressed Plaintiff's mental limitations and the ALJ's conclusion that Plaintiff did not have a severe mental limitation is fully supported by the evidence of record. Accordingly, the ALJ did not err in applying the Grids, instead of using a VE, because Plaintiff's mental impairments did not erode the work base for skilled, semi-skilled or unskilled sedentary work.

## V. CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter final judgment in favor of Plaintiff consistent with this Order and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on January 28, 2009.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel